STATE OF NEBRASKA, APPELLEE, v. BEVERLY J. (PAT) HOCHSTETLER, APPELLANT.

334 N.W.2d 455

Filed May 27, 1983. No. 82-529.

Earl D. Ahlschwede of Ahlschwede & Truell, for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

Following a trial by jury the defendant-appellant, Beverly J. (Pat) Hochstetler, was convicted of exercising control over property owned by another. In this appeal she contends the trial court erred by

(1) failing to grant defendant's motion, made at the close of the State's case in chief, to dismiss the information; (2) failing to grant her motion for a directed verdict made at the close of the State's case in chief; (3) failing to grant a new trial because of newly discovered evidence; and (4) imposing as a condition of probation the requirement that she "refrain totally from acting as her own lawyer, and . . . from representing herself as an attorney or a proctor." We affirm.

In its case in chief the State produced evidence from which the jury could find that during the latter part of April of 1981 defendant called one William Thompson in response to an advertisement he had run offering to purchase scrap iron. Defendant represented she had some old junk machinery owned by her father and that she wished to dispose of it. She directed Thompson to a farm near Scotia, Nebraska, which she occupied and represented she owned, so that Thompson could look over the equipment. During the next several days Thompson removed the equipment from the farm. Defendant executed a bill of sale, in the presence of a notary public, reciting as follows: "I, Mrs. B. J. Hochstetler, do hereby state that I have placed into the hands of Mr. Bill Thompson, Two old tractors, one Farmall, one Massey-Harris, and several pieces of old farm equipment for the purposes of scrapping." Thompson paid defendant a total of $140, $135 of which was for the farm equipment and $5 of which was for a pipe wrench. Leslie Denning, who owned the farm upon which the equipment was located, identified all the missing equipment as his, with the exception of one subsoiler which belonged to a neighbor. At no time had Denning given defendant permission to sell or otherwise dispose of the equipment. The value of Denning's equipment was established at well in excess of $1,000.

At the close of the State's case in chief defendant moved, in the alternative, for either dismissal of the

information against her on the ground the State failed to prove a prima facie case or for a verdict of not guilty on the ground there was a lack of sufficient evidence. Both motions were overruled by the trial court.

Defendant thereafter elected to testify on her own behalf. She confirmed that she rented the Scotia farm site from Denning and that she called Thompson about removing some scrap metal in response to his advertisement. She denied, however, that she showed him any farm equipment, claiming that she only directed him to different piles of scrap metal. She claimed Thompson stated he would have to go back to his home to get something to dig out the piles in order to determine whether he could remove the scrap. She denied seeing Thompson return to the farm to pick anything up. She admitted signing a bill of sale but stated she did not examine it very well, and denied receiving any money from Thompson.

In rebuttal the State called Thompson's son, who testified he accompanied his father to the Scotia farm site, that defendant was present on each of those two trips, and that he saw his father give the defendant money. Thompson's stepdaughter testified that she had accompanied her stepfather to the Scotia farm site on one trip, at which time she saw the defendant.

After that rebuttal testimony the defendant again took the stand and essentially denied that she had ever seen Thompson's son or his stepdaughter at the Scotia farm site.

At the defendant's hearing on her motion for new trial, an affidavit of one Clinton W. John was introduced into evidence. The thrust of the affidavit is that subsequent to defendant's trial Thompson apologized to defendant in words approximated by John as follows: "Pat, I sure am sorry, I had to say them things about you in court. I wouldn't hurt nobody for the world. But I had to say them things to

cover myself.'' The trial court overruled the motion for new trial and sentenced defendant to probation for a period of 3 years.

Defendant does not discuss in her brief the first assignment of error and we therefore do not address it. Errors assigned but not discussed will generally not be considered in either civil or criminal cases. Neb. Rev. Stat. § 25-1919 (Reissue 1979); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983); *State v. Beckner*, 211 Neb. 442, 318 N.W.2d 889 (1982).

As to the second assignment of error the rule is that the introduction of evidence by the defendant following the overruling of a motion for directed verdict at the close of the State's case waives any error in the ruling on the motion; however, the defendant is not prevented from questioning the sufficiency of the evidence in the entire record to sustain a conviction. *State v. Hilpert*, 213 Neb. 564, 330 N.W.2d 729 (1983); *Henggler v. State*, 173 Neb. 171, 112 N.W.2d 762 (1962).

We must therefore determine whether the record as a whole sustains the conviction. Defendant was charged with the crime of theft by taking or exercising control over movable property of another with the intent to deprive him thereof, pursuant to Neb. Rev. Stat. § 28-511(1) (Cum. Supp. 1982). Because the value of the property exceeds $1,000, it was charged as a Class III felony pursuant to Neb. Rev. Stat. § 28-518(1) (Cum. Supp. 1982). Therefore, the essential elements which the State was required to prove were that defendant had exercised control over the equipment owned by Leslie Denning, that she did so with the intent to deprive him of that property, and that the value of the property was over $1,000. If the jury believed the State's evidence each of those elements were established beyond a reasonable doubt. This court will not interfere with a jury verdict of guilty based upon evidence sufficient to support the verdict beyond a reasonable doubt. *State v. Welsh, ante* p. 60, 332 N.W.2d 685

(1983); *State v. Holland*, 213 Neb. 170, 328 N.W.2d 205 (1982); *State v. Brown*, 213 Neb. 68, 327 N.W.2d 107 (1982).

As to her third assignment of error defendant acknowledges that any newly discovered evidence such as to warrant a new trial must be so potent in nature that, by strengthening evidence already offered, a new trial would probably result in a different verdict. *State v. Pittman*, 210 Neb. 117, 313 N.W.2d 252 (1981); *State v. Munson*, 204 Neb. 814, 285 N.W.2d 703 (1979). There is nothing in the John affidavit which meets the requirement of that standard. The statements attributed to Thompson lead only to the conclusion that Thompson regretted the need to testify as to the occurrence in question. It certainly does not, as suggested by defendant, compel a finding that Thompson perjured himself in order to preserve his own safety at the expense of defendant's conviction.

We need not determine at this time whether the condition of probation imposed upon defendant, and recited in her fourth assignment of error, is an appropriate one or should be imposed on anything other than a case-by-case basis after the showing of defendant's inability to intelligently represent herself. We have nothing before us which establishes that defendant either wishes, or has sought and been denied, leave to represent herself in any proceeding. In that posture there is no present and existing controversy to resolve with respect to that issue; there is, therefore, no relief which we may grant. It is not our function to render advisory opinions. *City of Crete v. County of Saline, ante* p. 200, 332 N.W.2d 926 (1983); *Ellis v. County of Scotts Bluff*, 210 Neb. 495, 315 N.W.2d 451 (1982); *State ex rel. Douglas v. Ledwith*, 204 Neb. 6, 281 N.W.2d 729 (1979).

AFFIRMED.