RANDALL HANSEN AND JO ELLEN HANSEN, APPELLEES AND CROSS-APPELLANTS, V. LIEN TERMITE AND PEST CONTROL COMPANY OF OMAHA, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE.

428 N.W.2d 195

Filed August 26, 1988.   No. 86-570.

Robert V. Dwyer, Jr., of Dwyer, Pohren, Wood, Heavey & Grimm, and, on brief, James R. Place and Alan M. Thelen, of Breeling, Welling & Place, for appellant.

James E. Bachman, of Bachman & Blunk, P.C., for appellees.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and CHEUVRONT, D.J.

GRANT, J.

Defendant, Lien Termite and Pest Control Company of Omaha, Inc., a Nebraska corporation (hereinafter Lien), appeals from a judgment entered in favor of plaintiffs, Randall and Jo Ellen Hansen. Plaintiffs, prior to purchasing a home, contracted with defendant to inspect the home for termites. Defendant issued a certificate of termite inspection, and subsequently, termites were found in the house. Plaintiffs cross-appeal for an increase of the damages award.

On January 23, 1983, plaintiffs entered into an agreement to purchase a residence located in Omaha, Nebraska. On February 17, 1983, plaintiffs contracted with Lien to conduct a termite inspection of the house. Upon completion of the inspection, Lien issued its standard certificate of inspection, which stated in part:

> IT IS OUR OPINION there is no termite activity present at this time and termites have not impaired the strength of this building. This examination was made by inspecting exposed and accessible wood members and without opening plastered or finished parts of a building such as plastered or finished ceiling, walls and floors or by moving and removing building furnishings unless otherwise authorized.

Lien also issued a Veterans Administration wood destroying insect information report, which stated that "[t]he inspection covered the readily accessible areas of the property . . . ." This report also stated that "[v]isible evidence of previously treated infestation, which is now inactive, was observed" and that "[t]he window frame in basement bedroom at west wall has old termite damage."

About 13 months after the inspection, in early April of 1984, while Mrs. Hansen was vacuuming in the basement of the residence, she hit the mopboard with the vacuum cleaner, and the mopboard "disintegrated." This episode, in conjunction with the knowledge that the floors had been "giving real bad" since the time they moved in and that a basement archway was falling down, led plaintiffs to conclude that there was a problem. Plaintiffs then had the residence inspected by a different termite inspector, who discovered evidence of termites and termite damage.

Plaintiffs brought this action in May of 1984 against Lien in the district court for Douglas County, alleging in their petition that Lien had breached the contract because "the inspection by Lien's agent did not meet the skill and knowledge normally possessed by other termite inspectors in good standing in a similar community [in that] areas of visible evidence of prior damage was [sic] not noted in areas other than the window frame of the basement bedroom." A trial was held to the court, without a jury, and a judicial view of the premises was made. Judgment was entered in favor of plaintiffs for $16,700. Lien timely appealed.

On appeal to this court, Lien assigns six errors that may be consolidated into three: (1) "The trial court awarded the Appellees an improper measure of damages" for various reasons; (2) "[t]here was no evidence as to when the alleged damage occurred . . . therefore, the Appellant's Motion for Directed Verdict should have been sustained"; and (3) the trial court admitted, over Lien's objection, testimony and exhibits of plaintiffs which were not disclosed in plaintiffs' responses to discovery requests.

Plaintiffs' cross-appeal assigned as error that the trial court failed to accept uncontroverted evidence of damages as

controlling, thereby abusing its discretion and committing reversible error.

We first discuss Lien's assignment of error in the trial court's refusing to grant a directed verdict in favor of Lien because there was no evidence as to when the termite damage occurred.

Plaintiffs presented the evidence of a qualified longtime termite inspector from another termite control company. The witness testified that, at plaintiffs' request, he inspected plaintiffs' house on April 2, 1984. At the time of this inspection, there was a drywall ceiling in the basement. This ceiling obscured a view of some of the floor joists in the basement, but this inspector found termite damage in an area 3 to 4 inches wide by 36 to 40 inches long located between the air ducts and the furnace. This area was not covered by drywall and was visible on inspection. This damage was not reported by Lien in its examination. This witness further testified that the damage he saw on April 2, 1984, could not have occurred after February 17, 1983, which was the date of Lien's inspection. This witness further testified that the damage should have been discovered if that visible area had been inspected.

There was evidence contradicting this testimony. In a law action, when a jury has been waived, the findings of fact made by the trial court have the effect of a jury verdict and will not be set aside unless clearly wrong. *Murphy v. Stuart Fertilizer Co.*, 221 Neb. 767, 380 N.W.2d 631 (1986). Lien's assignment of error in this connection is without merit.

Lien's assignments of error concerning damages assert that the trial court used an improper measure of damages. Lien argues that the rule set forth in *Flakus v. Schug*, 213 Neb. 491, 497, 329 N.W.2d 859, 864 (1983), should be applicable in the instant case. In *Flakus*, we held that

> where there has been a misrepresentation in the sale of real estate, the measure of damages is the cost of placing the property conveyed in the condition represented, not exceeding the difference in value of the property conveyed and the value of the property if it had been as represented.

We hold that applying the measure of damages rule from *Flakus* would be incorrect in the instant case. The present case does not involve a misrepresentation in the sale of real estate

and does not involve a contract between buyer and seller. Rather, it is a contract action between a termite inspector and its customer. There is no transfer of property between the termite inspector and its customer in this case, and therefore the rationale of *Flakus* is not applicable. Lien was not making representations as a seller of property, but had contracted to perform an inspection for a fee. Lien warranted that "there is no termite activity present at this time and termites have not impaired the strength of this building."

A more appropriate rule is a modification of the rule set forth in *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 327-28, 322 N.W.2d 651, 656 (1982), where the court stated:

> Except as otherwise hereinafter limited, where an improvement upon realty is damaged without damage to the realty itself and where the nature of the thing damaged is such that it is capable of being repaired or restored and the cost of doing so is capable of reasonable ascertainment, the measure of damages for its negligent damage is the reasonable cost of repairing or restoring the property in like kind and quality. . . .
>
> . . . If, in fact, the cost of repair or restoration exceeds the market value of the property just before the injury, then the proper measure of damages is the market value of the property just before the damages were incurred, less any salvage.

Lien argues that the instant case can be distinguished from cases such as *"L" Investments, Ltd. v. Lynch, supra,* because the damage to plaintiffs' residence was not caused by any tortious act by Lien. The damage was caused by termites. Lien further argues that plaintiffs sued for breach of contract rather than in tort. This factual situation, Lien argues, would place the present case under the *Flakus* formula for damages rather than under the *"L" Investments, Ltd.* formula.

As stated above, the rationale of *Flakus* is not present in this case. In a *Flakus* situation, the seller makes misrepresentations to the buyer which result in an overstated market value. The seller is then ordered to pay damages sufficient to bring the property up to the represented market value. If the cost of doing this is greater than the market value of the property as

represented, then the buyer would receive a windfall, more than he paid for the property.

The same factors are not present in the instant case. In this case, plaintiffs wished to purchase a residence from a seller. In order to insure against the possibility of visible termite infestation, plaintiffs (buyers) employed Lien as a termite inspector. Relying on Lien's assurances that there were no visible signs of termites and that "termites have not impaired the strength of this building," plaintiffs purchased the residence for $37,500.

This is not an action for damage to property. Lien did not damage plaintiffs' property. The termites did. Rather, this is an action for damages resulting from Lien's breach of contract in violating its warranty that there was no termite damage. Plaintiffs relied on Lien's representation that their residence had no visible signs of termite infestation. We hold that the proper rule for measuring damages in a case where a termite inspector has breached a contract to inspect a residence in conformance with the contract terms, and where the purchaser of the inspected residence has relied on this inspection, is the reasonable cost of repairing the termite damage which "impaired the strength of [their] building." This amount is limited by the market value of the property less the fair market value of the land and less any salvage value.

In the instant case, the trial court, as trier of fact, found that the cost of repairs was $16,700. Plaintiffs purchased the residence for $37,500. Plaintiffs also adduced evidence that the market value of the land was $5,000. The maximum amount of damages which plaintiffs could be awarded is $32,500 (i.e., $37,500 less $5,000). This prevents any windfall to plaintiffs, and plaintiffs did not receive a windfall in this case.

Lien also assigns as error that there was no evidence as to the cost of repairing the house on February 17, 1983, the date of its termite inspection. Lien points out that plaintiffs' witness who was testifying on cost estimates for repairs used standard cost estimates as of the time of trial, December 4, 1985, and January 3, 1986. Lien argues that plaintiffs' witness should have estimated the cost of repairs using cost estimates as of the date of Lien's inspection.

In support of this argument, Lien states at page 17 of its brief that "[i]n the trial court's Judgment Order, it was correctly inferred that the relevant cost of repairs, if any, was that cost which would have been incurred 'if the defendant had discovered the termites on February 17, 1983, and the necesary [sic] repair work were done at that time.' " The complete sentence in the trial court's order holds:

> As a direct and proximate result of defendant's breach of duty as aforesaid, plaintiffs were damaged in the amount of $16,700.00, the amount it would take to repair 6315 and make it as structurally sound as it would have been if the defendant had discovered the termites on February 17, 1983, and the necessary repair work were done at that time.

Lien contends that the trial court stated that it had determined the cost of repairs should be calculated as of the date of Lien's inspection, but did not do so. Lien contends that the court correctly determined the date of calculating the repairs, but there was no evidence of the cost of repairs on that date.

On this issue, plaintiffs contend that the proper time to measure the cost of repairs is at the time of trial, not at the time of the breach of contract or warranty. In support of their position, plaintiffs cite *Rovetti v. City and County of San Francisco*, 131 Cal. App. 3d 973, 978, 183 Cal. Rptr. 1, 2-3 (1982):

> Appellant accepts the trial court's use of "repair costs" as a measure of damages but it claims respondents benefited by their lack of diligence in repairing their property. We fail to see what benefit could come to respondents when they are given merely what it costs to repair the damage caused by appellant. Increasing an award to compensate for the effects of inflation insures that a plaintiff will not receive less than he is entitled to; such an increase merely removes the impact of inflation from the amount of the judgment awarded. Where an inflation adjustment is made the impact of delay is minimized, not exacerbated; and the defendant is denied the windfall of paying for an injury with dollars of diminished value. The plaintiff

recovers only that which time has already taken from him.

We cannot agree entirely with the *Rovetti* approach. In the case before us, there is no reason to go back to the date of Lien's breach to calculate the repairs. Lien, by its nonactions, caused damage to plaintiffs. That damage was hidden and not discovered by plaintiffs for some 13 months. If it be assumed that prices had increased due to inflation, plaintiffs should not be penalized further by requiring them to go back in time and calculate their damages at the time of the hidden injury. We hold that the cost of repairs, if that cost properly reflects the damages, should be calculated as of the time the hidden damage is, or in the exercise of reasonable diligence could be, discovered. It is at this time that the damages that Lien has caused are fixed. Lien's contention that the repairs should be calculated as of the time of its inspection is without merit.

Lien's next assignment of error contends that the trial court should not have admitted testimony on lump-sum damages figures without sufficient foundation as to the composition of the figures. Plaintiffs called an expert witness to estimate the cost of repairing the residence. The witness, Walter Rudeen, is a structural engineer with extensive engineering experience working with floor structures, roof structures, trusses, beams, joists, foundations, and foundation walls. Rudeen prepared an itemized estimate of repairs, which included the following items and their costs: roof shoring, floor demolition, electrical and ventilation, exterior and interior studs, replacement of floors, new flooring, ceiling, painting, and miscellaneous, for a total estimate of $34,900.

Lien, citing our decision in *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986), argues that the expert witness' estimate should not have been admitted into evidence as a summary of voluminous writings. Defendant contends that the requirements under Neb. Rev. Stat. § 27-1006 (Reissue 1985) for admission of the exhibit were not satisfied. This argument is without merit. The document is not a summary of voluminous writings, but is Rudeen's one-page estimate. Once he was questioned and qualified as an expert witness in the construction estimate field, Rudeen was competent to testify regarding the basis for his cost estimates.

Lien's final assignment of error asserts that the trial court erred when it admitted testimony and exhibits which were not disclosed in plaintiffs' responses to discovery requests. The transcript before us does not contain either Lien's interrogatories addressed to plaintiffs or plaintiffs' answers to them, but on examination of plaintiffs' witness Rudeen, reference is made to an interrogatory. Plaintiffs' counsel read into the record the answer to this interrogatory. We will consider the issue presented.

Lien apparently sent the following interrogatory to plaintiffs:

> With respect to each person identified in your answer to the preceding Interrogatory, set forth the subject matter on which he or she is expected to testify, set forth the substance of the facts and opinions to which he or she is expected to testify, and set forth a summary of the grounds for each such opinion.

The plaintiffs read their answer as follows: "Walter D. Rudeen. In order for the home to be made structurally sound, the resulting cost of repair will be $34,900."

During Rudeen's testimony, it was ascertained that Rudeen has visited the subject residence for inspection not once but twice. Lien objected to any testimony arising out of this second visit to the residence, because plaintiffs had not set forth in plaintiffs' answer to the relevant interrogatory the substance of the facts and opinions of this second visit. The trial court overruled Lien's objection. We agree.

The testimony given by Rudeen resulting from his second visit to the residence was simply foundational in nature. As stated in plaintiffs' answer to the interrogatory, the purpose for calling Rudeen as an expert witness was to provide an estimate of repair costs. The testimony objected to by Lien did not broaden the scope of Rudeen's opinion. During his second visit to the residence, Rudeen simply inspected various rooms to help refresh his memory for purposes of his repair estimate. Plaintiffs asked Rudeen foundational questions regarding his second visit to establish that he had knowledge of the residence sufficient to substantiate his estimate. Lien's assignment of error in this respect is without merit. The action of the trial

court in holding Lien liable is affirmed.

With regard to plaintiffs' cross-appeal for an increased damages award, we reverse and remand. For the reasons set out above, it is clear that the trial court used an incorrect date in calculating the cost of repairs as damages. The cause is remanded on the issue of damages only. Appellees' request for attorney fees is denied.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.