## TOGO INTERNATIONAL, INC., Appellee,

### v.

## MOUND STEEL CORPORATION, Appellant. *

[Cite as *Togo Internatl., Inc. v. Mound Steel Corp.* (1995), 106 Ohio App.3d 246.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA94–12–228.

Decided Sept. 5, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1524, 660 N.E.2d 744.

*Frost & Jacobs* and *Joseph J. Dehner*, for appellee.

*Sheets, Ernst & Diehl* and *Thomas J. Diehl*, for appellant.

POWELL, Judge.

Defendant-appellant, Mound Steel Corporation ("Mound"), appeals an order of the Butler County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Togo International, Inc. ("Togo").

Togo is an American subsidiary of a Japanese corporation in the business of manufacturing, designing, engineering, constructing and selling amusement park rides and attractions. Mound is in the business of manufacturing, constructing and fabricating items from metal. In early 1991, following negotiations during which, according to Mound, Togo represented that it would order millions of dollars worth of fabrications and erection work from Mound for different types of amusement park rides, Mound decided to enter into a business relationship with Togo. The parties agreed that Mound would be the exclusive North American fabricator of Togo's amusement park rides and attractions and that in return Mound would not contract with any of Togo's competitors. Mound alleges that it invested approximately two million dollars in the erection of facilities and other start-up costs for the anticipated projects with Togo. Following the parties'

agreement, Mound began fabricating work on the "Mega Coaster," a roller coaster designed by Togo.

Beginning in 1993, the parties' business relationship began to deteriorate. During a meeting on or about November 29, 1993 at which Togo's counsel was present, Togo told Mound that Mound's fabrication and erection of the "Mega Coaster" did not meet Togo's design specifications and that as a result, major sections of Mound's work would have to be replaced to make the roller coaster work properly. Togo stated that it had a claim against Mound for millions of dollars and that Togo would "own Mound Steel after this was all over." On December 2, 1993, the parties met again. Togo and its counsel reiterated their positions.

By then, Mound was "uncertain as to the legitimacy of Togo's position." On December 8, 1993, Mound proposed to Togo that an independent expert be retained to appraise the condition of the roller coaster and to determine the extent of Mound's alleged fabrication and erection errors. Togo categorically refused and threatened to seek greater damages for the delay in the project if Mound proceeded to have the roller coaster inspected. Togo further threatened to begin litigation immediately if the parties did not execute a release severing their contractual relationship.

On January 11, 1994, the parties entered into a settlement agreement which provides:

"This Agreement is to confirm the final accord reached between Mound Manufacturing, a division of Mound Steel Corporation ('Mound'), and TOGO International Inc. ('TOGO'), during a meeting of December 9, 1993 which was held for the purpose of defining responsibilities and other matters relating to the completion of the MEGA coaster project ('the Project'). The agreements reached and/or responsibilities to be undertaken are as follows:

" * * *

"7. Although Mound had agreed that they would perform fabrication on amusement rides only for TOGO and TOGO had agreed that Mound would be their sole fabricator of amusement rides in the United States, it is now considered in the best interests of both parties that each be free to contract with whomever they wish in the future, and that all agreements relating to exclusiveness be waived.

" * * *

"12. Except as expressly set forth herein, the parties hereby release and forever discharge one another from any and all causes of action, suits, liquidated damages, debts, sums of money, claims for lost profits and all other claims or demands of any kind or description whatsoever which they now have or have had,

or may have. Without limiting the foregoing, this release expressly applies to any claim which Mound could otherwise assert to payments from TOGO in the event TOGO elects to employ a different fabricator to fabricate roller coasters or other amusement rides in the United States or anywhere else in the Western Hemisphere. This release shall be binding upon and inure to the benefit of the parties' employees, officers, directors, attorneys, predecessors, successors, assigns and any other party claiming through or in privity with the parties."

On July 8, 1994, Togo filed a complaint against Mound alleging, *inter alia*, that Mound was disseminating Togo's confidential business information and trade secrets to Togo's competitors. On July 22, 1994, Mound filed an answer and counterclaim, alleging breach of contract for the promised business it did not get from Togo. On September 6, 1994, Togo filed a motion for summary judgment, arguing that Mound's counterclaim was barred by the parties' January 11, 1994 release agreement. The trial court granted Togo's motion on December 2, 1994 and dismissed Mound's counterclaim.

■ Mound timely filed this appeal and raises two assignments of error. Mound's first assignment of error reads as follows:

"The Trial Court erred in granting summary judgment as a genuine issue of material fact exists as to whether Appellant, Mound, was fraudulently induced to execute to [*sic*] Release of Claims against Appellee, Togo."

■ To establish a right to relief upon a claim of fraudulent inducement, one must show (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance on the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 322, 544 N.E.2d 265, 273. A release obtained by fraud in the inducement is merely voidable and can be contested only after the releasor tenders back the consideration he received for making the release. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210–211.

In granting Togo's motion for summary judgment, the trial court found that Mound had not relied on Togo's representations with regard to Mound's improper fabrication and the ultimate cost of restoration. "In fact, [Mound was] uncertain, but rather than 'tough it out' it became expedient to enter into a release." The trial court also found that Mound had not returned the consideration.

■ The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties. *Lepera v. Fuson* (1992), 83 Ohio App.3d 17, 26, 613 N.E.2d 1060, 1065–1066. Reliance is justifiable if the representation does not appear unreasonable on its face and if, under the

circumstances, there is no apparent reason to doubt the veracity of the representation. *Id.*

In *Dayton–Walther Corp. v. Kelly* (1987), 42 Ohio App.3d 184, 537 N.E.2d 682, the plaintiff brought suit against a health foundation and two of its doctors who had allegedly supplied false information concerning the plaintiff's employees in various workers' compensation claims brought by the employees. In the workers' compensation claims, the plaintiff employer contested the employees' injuries and thereby the doctors' reports. The Hamilton County Court of Appeals dismissed the plaintiff's fraud claim against the doctors, finding that by disputing the legitimacy of the doctors' reports, the plaintiff had not relied on them. *Id.* at 186–187, 537 N.E.2d at 684–685.

In the case at bar, not only was Mound uncertain as to the legitimacy of Togo's position, it also sought, albeit unsuccessfully, to obtain an independent inspection of the roller coaster. We find that by doing so, Mound did not rely on Togo's representations regarding the improper fabrication of the roller coaster. See *Dayton–Walther Corp., supra.* We therefore find that there is no genuine issue of material fact regarding Mound's fraudulent inducement claim and that reasonable minds could come to but one conclusion, which is adverse to Mound. Mound's first assignment of error is overruled.

Mound's second assignment of error reads as follows:

"The Trial Court erred in granting Summary Judgment where a genuine issue of material fact exists as to whether the release was signed by Mound under duress."

To establish a right to relief upon a claim of economic duress,[1] one must show (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that the circumstances were the result of coercive acts of the opposite party. *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 246, 551 N.E.2d 1249, 1251–1252. "The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities." *Id.*

Generally, a threat to do what one is legally entitled to does not constitute duress. See *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 108, 614 N.E.2d 765, 768–769. In addition, it is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other, *Blodgett, supra,* 49 Ohio St.3d at 246, 551 N.E.2d at 1251–1252, or

---

1. While the language in Mound's second assignment of error only refers to the term "duress," the analysis under the assignment deals with economic duress.

that hard bargaining positions exist, *In re Ousley* (S.D.Ohio 1988), 92 B.R. 278, 283.

Both parties cite *Maust, supra,* in support of their positions. In *Maust,* a bank employee signed a termination agreement and release. The employee subsequently sued the bank on various tort claims. The bank denied liability and moved for summary judgment on the basis of the release. The employee claimed that the release had been procured by fraud and signed under duress. The extent of the alleged duress was the bank's threat to financially ruin the employee and to "exert its influence in the community to prevent him from getting a job or credit" if the employee did not sign the release. The court of appeals held that an issue of fact existed as to whether the release had been obtained under duress. *Id.,* 83 Ohio App.3d at 110, 614 N.E.2d at 769–770. However, finding that the employee had failed to tender back the consideration prior to filing the suit, the court held that the employee's claims were barred by a valid release and affirmed the trial court's granting of the bank's motion for summary judgment. *Id.* at 110–111, 614 N.E.2d at 769–770.

In the case at bar, the trial court factually distinguished *Maust* as follows: "In *Maust,* * * * we have one sophisticated party to a contract and one unsophisticated; *sub judice,* we have two sophisticated parties (corporations) and their attorneys dealing on an equal footing." The trial court then held that a claim of economic duress was not available to Mound because "[t]he facts *sub judice* simply represent a situation wherein Mound took what [it] considered the quick, easy and cheap way out of a bad situation as an alternative to 'toughing it out' at some expense."

Upon review of the record, we find that there is no genuine issue of material fact regarding Mound's economic duress claim and that reasonable minds could come to but one conclusion, which is adverse to Mound. The extent of the alleged duress consisted of Togo's threat to sue Mound and to eventually own it, to begin litigation immediately if Mound refused to execute the release, and to seek greater damages if Mound pursued to have the roller coaster inspected. Like the trial court, we find *Maust* to be factually distinguishable from this case. We further find that Togo's threats regarding litigation were not improper threats. See *Maust, supra,* 83 Ohio App.3d at 108, 614 N.E.2d at 768–769. Finally, we find that Togo's threat to own Mound was a hard bargaining position, which is not enough to constitute duress. *In re Ousley, supra,* 92 B.R. at 283. Mound's second assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and KOEHLER, J., concur.